**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| CHRISTY RATCLIFF | CIVIL ACTION NO. 08-1206 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| PSYCHIATRIC SOLUTIONS, INC. and BRENTWOOD BEHAVIORAL HEALTH CENTER | MAGISTRATE JUDGE HORNSBY |

## JUDGMENT

Before this Court is a Motion for Decision [Record Document 22] filed on behalf of the Plaintiff, Christy Ratcliff ("Ratcliff"). Ratcliff contends Psychiatric Solutions, Inc. ("PSI"), as the Plan Administrator, erroneously terminated her COBRA coverage, effective October 31, 2007. See id. In response, PSI argues Ratcliff's COBRA coverage was correctly terminated after she failed to timely make her premium payments. [Record Documents 24 & 25]. Both parties agree that a judgment may be entered upon the Court's consideration of the administrative record.

## FACTUAL BACKGROUND

Plaintiff Christy Ratcliff ("Ratcliff") was employed by Brentwood Behavioral Health Center, a subsidiary of Psychiatric Solutions, Inc. ("PSI"), as a Business Office Representative in August 2005. On August 29, 2007, she was terminated, effective August 31, 2007, on the grounds that she was "not dependable."[1]  [PSI_Ratcliff 00107].  Her

---

[1]On August 29, 2007, Ratcliff was scheduled to report to work after a 2:30 p.m. doctor's appointment.  Ratcliff failed to report to work or call to advise that she would be unable to report.  Ratcliff had been warned about her behavior on two prior occasions. See PSI_Ratcliff 00108.

termination report cited incidents relating to "attendance," "lateness/early quit," "failure to follow instructions," and "violation of company policies & procedures." [PSI_Ratcliff 00108]. Upon her termination, Ratcliff became eligible to participate in PSI's Group Health Benefits Continuation Plan ("the Plan").  On October 3, 2007, COBRA Connection ("COBRA Connection"), PSI's third-party vendor for providing continuation coverage, sent Ratcliff notice of her eligibility to participate in the Plan and her obligation to pay monthly premiums in the amount of $408.97 if she choose to enroll in the plan.  [PSI_Ratcliff 0017-18].  The notice listed her "Qualifying Event Date" as August 31, 2007, and indicated that she had until December 1, 2007 to return the enrollment form.  Id.  The notice stated that "all initial premium payments" must be paid "within forty-five days of the day" the Enrollment Form is signed and dated, and provided the following schedule for the first premium payment:

| Schedule of First Payment | | Premium |
|---|---|---|
| Amount Due if Enrollment Form Signed And Received in Our Office: | 09/30/2007 | $408.97 |
| Amount Due if Enrollment Form Signed And Received in Our Office: | 10/31/2007 | $817/94 |
| Amount Due if Premium Paid By..................: | 11/30/2007 | $1,226.91 |
| Amount Due if Premium Paid By..................: | 12/31/2007 | $1,635.88 |

Id.

On October 15, 2007, Ratcliff signed the Enrollment Form and made her first premium payment in the amount of $408.97.  [PSI_Ratcliff 0018, 0020].  On October 18, 2007, COBRA Connection sent Ratcliff a letter confirming her enrollment in the Plan and

verifying that her initial premium payment had been received.    [PSI_Ratcliff 0034].  The letter further informed Ratcliff:

> ***Your COBRA premiums are now paid through 09/30/2007. You have until 11/30/2007 to complete your enrollment by payment premiums through November.***  The amounts due for each month are shown below, and this notice will serve as your only premium invoice for the premiums due for those months.
>
> Amount if premium paid by: 10/01/1007        $408.97
> Amount if premium paid by: 11/01/2007        $817.94
>
>        * * *
>
> ***All subsequent monthly premium payments are due the first-day of each month with a thirty-day grace period.***  Your payment must arrive with a postmarked date on or prior to the last day of the grace period.  Failure to remit a timely premium payment will result in  retroactive termination. Premium reminder notices are mailed out as a courtesy approximately two weeks before the due date.  Failure to receive a monthly notice does not affect the payment guidelines.

Id. (emphasis added).

After receiving this letter, Ratcliff made one premium payment in the amount of $408.97 on November 13, 2007.  [PSI_Ratcliff  0027].  On November 27, 2007, COBRA Connection sent Ratcliff a courtesy letter stating that an additional payment in the amount of $408.97, due November 1, 2007, had not been received and reminded Ratcliff that such payment "must be postmarked within 30 days of 11/01/2007 to prevent termination of participation in the plan."  [PSI_Ratcliff 009].  Ratcliff did not make the premium payment as requested and on December 7, 2007, COBRA Connection notified Ratcliff that her participation in the Plan had been terminated because she "failed to pay premium(s) on time."  [PSI_Ratcliff 0011].  Ratcliff was provided with a Certificate of Group Health Plan

Coverage certifying her coverage under the Plan from September 1, 2007 through October 31, 2007.  [PSI_Ratcliff 0013].

On December 7, 2007, the same day she was notified that her continuation coverage had been terminated, Ratcliff remitted a check to COBRA Connection in the amount of $817.94.  [PSI_Ratcliff 0029].  That same day, Ratcliff's attorney sent a letter to COBRA Conecction stating Ratcliff "was unaware of the requirements of Cobra Connection" and the schedule by which the premium payments were due.  [PSI_Ratcliff 0024-25].  The letter notified COBRA Connection of Ratcliff's intent to appeal the termination of her continuation coverage and requested reinstatement of the policy.  Id. On January 18, 2008, Ratcliff again disputed the timeline by which her premium payments were due and remitted payment in the amount of $408.97 for the January 2008 premium. [PSI_Ratcliff 0022-23, 0035].

By letter dated February 1, 2008, COBRA Connection informed Ratcliff that the initial decision to terminate her continuation coverage was being upheld as it had been determined that her "November 1, 2007 payment, which was due and must be postmarked by 11/30/07, was not received by the date required."  [PSI_Ratcliff 0037-38].  Thereafter, Ratcliff filed a second administrative appeal of the decision to terminate her continuation coverage and supplemented the administrative record to include the personnel file and wage information from PSI.  [PSI_Ratcliff 0044-45, 0049-50].  By letter dated May 2, 2008, the Appeals Committee affirmed the initial decision to terminate Ratcliff's continuation coverage for failure to make her November premium payment within the thirty day grace period.  [PSI_Ratcliff 001-2].

Ratcliff, relying on the terms set forth in the October 3, 2007 letter from PSI and PSI's conduct in accepting her payment for FMLA, contends her continuation coverage was erroneously terminated and that she is entitled to reinstatement of her coverage under the Plan effective November 1, 2007.  [Record Document 22].  In addition, Ratcliff seeks to recover civil penalties, payment of medical provider charges, interest, and attorneys fees.  Id.  PSI opposes this motion and moves the Court to enter judgment in its favor. [Record Documents 24 & 25].

## STANDARD OF REVIEW

Ratcliff's claims for denial of benefits under the Plan are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, as amended by the Consolidated Omnibus Budget Reconciliation Act of 1968 ("COBRA"), 29 U.S.C. § 1161 *et seq*.  Ordinarily, a denial of benefits under an ERISA plan is reviewed under a *de novo* standard.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956, 103 L.Ed.2d 80 (1989).  But when, as in this case, "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court must apply an abuse-of-discretion standard.[2]  Id. at 115, 109 S. Ct. at 956-57.

In determining whether a plan administrator has abused its discretion, the court must consider whether the decision was arbitrary or capricious.  Sweatman v. Commercial Union Ins. Co., 39 F.3d 594, 601 (5th Cir. 1994).  A decision is arbitrary or capricious only

---

[2]Ratcliff concedes the Plan reserves the employer the right to construe the terms of coverage and that the appropriate standard of review is for abuse of discretion.  See Record Document 22, p.11.

if "made without a rational connection between the known facts and the decision or between the found facts and the evidence."  Meditrust Fin. Servs. Corp. v. Sterling Chemicals, Inc., 168 F.3d 211, 215 (5th Cir. 1999) (quoting Bellaire Gen. Hosp. v. Blue Cross Blue Shield, 97 F.3d 822, 828-29 (5th Cir. 1996)).  The court's review is generally confined to the record available to the administrator at the time the claim was denied, Id.; although any potential conflict of interest of COBRA Connection as plan administrator and benefit insurer may be a factor in the court's review.  Sweatman, 39 F.3d at 599.

Utilizing the abuse of discretion standard of review, the Court can reverse the plan administrator's decision only in the absence of substantial evidence to support a plan administrator's decision.  "Substantial evidence" is defined as "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Ellis v. Liberty Life Assur. Co. of Boston, 394 F.3d 262, 273 (5th Cir. 2004) (quoting Deters v. Sec. of Health, Educ. & Welfare, 789 F.2d 1181, 1185 (5th Cir. 1986)).  Thus, so long as the decision to terminate benefits is supported by substantial evidence and is not arbitrary and capricious, the plan administrator's decision must prevail.  Id.

## DISCUSSION

Section 1162(2)(C) of COBRA provides that a continuing coverage plan governed by ERISA "ceases under the plan by reason of a failure to make timely payment of any premium required under the plan with respect to the qualified beneficiary."  29 U.S.C. § 1162(2)(C); see also, 26 C.F.R. § 54.4980B-8 at A-1 ("A group health care plan can terminate a qualified beneficiary's COBRA continuation coverage as of the first day of any period for which timely payment is not made to the plan with respect to that qualified

beneficiary.").  A premium payment is "timely" for COBRA continuation coverage if payment "is made to the plan by the date that is 30 days after the first day of that period."  26 C.F.R. § 54.4980B-8 at A-5.

In this matter, Ratcliff does not argue that all premium payments were *actually* made in a timely manner, but merely that she *believed* her premium payments were being timely made as required by the letter and notice dated October 3, 2007.  [Record Document 22]. Specifically, Ratcliff argues the October 3, 2007 letter "is misleading and provides misinformation as to the due date of premiums" and that PSI should be estopped from enforcing conflicting premium schedules that were subsequently issued by COBRA Connection.  Id.  "To the extent the notice provided was ambiguous and misrepresentative of the actual payment schedule," Ratcliff asserts the notice must be construed against the employer and in her favor.  Id.  "At best," she argues, "the subsequent notices and letters failed to notify [her] that an additional month of premium was purportedly owed."  Id.

After thoroughly reviewing the Administrative Record, particularly the notices and letters notifying Ratcliff of the amount and due dates for her premium payments, the Court does not believe the decision to terminate Ratcliff's continuation coverage was an abuse of discretion by PSI as the plan administrator.  Rather, the October 3, 2007 notice issued by COBRA Connection set forth Ratcliff's obligations in precise, unambiguous terms.  See PSI_Ratcliff 0017-18.  If Ratcliff choose to enroll in COBRA's continuation coverage plan, she was required to pay the $408.97 premium for each month beginning September 1, 2007.  Id.  On October 15, 2007, upon receiving Ratcliff's Enrollment form and a premium payment in the amount of $408.97, COBRA Connection sent a letter to Ratcliff confirming receipt of her enrollment and initial premium payment.  [PSI_Ratcliff 0034].  Consistent with

the October 3, 2007 letter, COBRA Connection advised Ratcliff that her premiums were

"paid through 9/30/2007" and stated that two monthly premiums in the amount of $408.97,

or a total amount of $817.94, was due no later than November 30, 2007 to complete her

enrollment in the Plan through the month of November.  Id.; see also PSI_Ratcliff 009

(11/27/07 letter remaining Ratcliff that payment "must be postmarked within 30 days of

11/01/2007 to prevent termination of participation in the plan.").  Despite the express terms

of these letters, which were neither "misleading" nor "ambiguous," Ratcliff made only one

additional payment in the amount of $408.97 prior to November 30, 2007.  See

PSI_Ratcliff 0027.  Consequently, Ratcliff's eligibility to participate in the Plan ceased on

November 30, 2007 for her failure to make a second payment in the amount of $408.97

(for a total amount of $817.94) prior to that date.[3]

A letter from Ratcliff's attorney suggests Ratcliff may not have opened or read the

correspondence from COBRA Connection providing a schedule for the amount and due

dates of the required premium payments. [PSI_Ratcliff 0015-16 ("Only since that time has

Mr. Ratcliff located among Christi's mail a letter from Cobra giving a schedule of first

payments.")].  Nevertheless, Ratcliff's *personal* failure to open her mail and read the

correspondence from COBRA Connection which clearly set forth her responsibilities and

obligations under the Plan cannot, under any circumstance, be considered a failure by

COBRA Connection to provide adequate notice.

---

[3]Ratcliff makes an argument that her continuation coverage should be extended based on the timing under which she paid portions of her healthcare premiums while on FMLA leave from June 13, 2007 through August 20, 2007.  See Record Document 22. However, all such payments were timely made within the thirty day grace period and have no bearing on her subsequent obligation to make premium payments for continuation coverage under the Plan.

## CONCLUSION

In the absence of substantial evidence demonstrating the decision to terminate Ratcliff's continuation coverage was an abuse of discretion or was otherwise "arbitrary and capricious," the decision to terminate her continuation coverage must prevail.

Accordingly,

**IT IS ORDERED** that PSI's decision to terminate Ratcliff's COBRA continuation coverage be and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Judgment be entered in favor of the Defendants, Psychiatric Solutions, Inc. and Brentwood Behavioral Health Center, and that Plaintiff Christy Ratcliff's claims be **DISMISSED WITH PREJUDICE.**

**THUS DONE AND SIGNED** in Shreveport, Louisiana, on this 16th day of July, 2010.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE